UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT MILLS,

                        Petitioner,

        -vs-                          **DECISION AND ORDER**
                                      **No. 6:14-cv-06113-MAT**

JOHN LEMPKE,

                        Respondent.
_____

## I.    Introduction

Proceeding <u>pro</u> <u>se</u>, Robert Mills ("Petitioner") filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.
Petitioner is incarcerated pursuant to a judgment, entered against
him on October 5, 2010, in Erie County Court (D'Amico, J.) of
New York State, convicting him, following a guilty plea, of one
count of Manslaughter in the First Degree (N.Y. Penal Law ("P.L.")
§ 125.20(1)).

## II.   Factual Background and Procedural History

Under Erie County Indictment No. 01282-2010, Petitioner was
charged with two counts of Murder in the Second Degree (P.L.
§ 125.25(1), (3)) and one count of Robbery in the First Degree
(P.L. § 160.15(3)). The charges stemmed from Petitioner's alleged
involvement in the fatal stabbing of Anthony Locasio ("the victim")
on May 14, 2010, in the City of Buffalo.

On September 14, 2010, Petitioner pleaded guilty to one count
of first degree manslaughter in full satisfaction of the

indictment. As part of the plea, Petitioner waived his right to appeal. On October 5, 2010, Petitioner was sentenced to a determinate term of 22 years to be followed by 5 years of post-release supervision.

Represented by new counsel, Petitioner filed a timely notice of appeal in the Appellate Division, Fourth Department, of New York State Supreme Court ("the Fourth Department").

On December 6, 2011, Petitioner filed a pro se motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Erie County Court, arguing that he was denied the effective assistance of counsel because his attorney (1) failed to raise a justification defense; (2) provided "false" information that the victim had been stabbed multiple times; (3) provided "false" information that Petitioner was unlikely to be released on parole if he were convicted and sentenced to 25 years to life; and (4) failed to request a hearing to challenge Petitioner's inculpatory statements to the police on the basis he was represented by counsel on an unrelated charge at the time of the interrogation. The Erie County District Attorney's Office opposed the motion in papers dated March 11, 2012. On April 12, 2012, Erie County Court Judge Michael L. D'Amico ("the 440 Court") denied the motion as without merit. Leave to appeal was denied on September 21, 2012.

On November 30, 2012, Petitioner, on the advice of counsel, signed a Stipulation of Discontinuance  with regard to his unperfected direct appeal in the Fourth Department. The appeal subsequently was dismissed on December 13, 2012.

Petitioner filed a second pro se C.P.L. § 440.10 motion, again arguing that trial counsel was ineffective  for providing "false" information that the victim had been stabbed multiple times, and providing "false" information regarding Petitioner's likelihood of parole if convicted after a trial on all counts in the indictment. The prosecution filed an affidavit in opposition on September 18, 2013, and the 440 Court denied the motion on November 22, 2013. The 440 Court agreed with the prosecutor that the motion should be dismissed pursuant to C.P.L. § 440.10(3)(b), which allows a court to deny a C.P.L. § 440.10 motion where the grounds were asserted in a prior C.P.L. § 440.10 motion and found to be without merit, and there has been no retroactively effective change in the law controlling the previously asserted issues. The 440 Court alternatively rejected the claims as without merit, finding no proof either that defense counsel made misrepresentations regarding the state of the law or that he attempted to coerce Petitioner into pleading guilty. Petitioner did not seek leave to appeal.

Petitioner filed the instant habeas petition on March 3, 2014, asserting the following grounds for relief: (1) his guilty plea was not knowing, voluntary and intelligent because of trial counsel's

erroneous advice; (2) trial counsel was ineffective for failing to raise a justification defense; (3) trial counsel was ineffective for failing to request a hearing to test the admissibility of his statements to the police; and (4) appellate counsel was ineffective for advising Petitioner to discontinue his direct appeal. Respondent filed an answer and opposition memorandum of law on June 26, 2014. Petitioner did not file a traverse.

For the reasons discussed below, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. Discussion

### A.    Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel was ineffective for failing to raise a justification defense, where "[t]he autopsy report of the victim, as well as other evidence in the case, clearly showed that the petitioner had a viable justification defense. . . ." Pet., ¶ 22(B). The 440 Court rejected this claim, finding that Petitioner had "failed to provide any proof that counsel, a seasoned criminal defense attorney, was incapable of properly assessing the strength of the prosecution's case, including whether a justification defense was viable . . . ." Erie County Court Order dated 4/12/12, p. 4.

In order to establish that trial counsel was ineffective, Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness, and that (2) but for

counsel's deficient performance, the outcome of Petitioner's criminal proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). In the context of a guilty plea, the second prong of the Strickland test is satisfied upon a showing by the petitioner "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted). Importantly, the second prong of the Strickland inquiry is not satisfied merely by a defendant's testimony that he would have gone to trial had he known of a potential defense, "since a defendant's testimony after the fact 'suffers from obvious credibility problems.'" Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991) (quoting Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988)).

Where, as here, "the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill, 474 U.S. at 59  (citation omitted). As discussed further below, based upon Petitioner's own statements and the medical evidence from the autopsy, there is no reasonable probability that a defense of justification would have succeeded at trial.

Under New York law, the justification defense requires the defendant to reasonably believe that the use of deadly physical force is necessary to defend himself from the use, or imminent use, of unlawful deadly physical force. See N.Y. PENAL LAW § 35.15(2)(a). The defense is qualified by a duty to retreat, unless the person acting defensively cannot do so in complete safety to himself, or is in his own home and is not the initial aggressor. Id., § 35.15(2)(a)(i). Thus, consistent with most justification provisions, Penal Law § 35.15 permits the use of deadly physical force "only where requirements as to triggering conditions and the necessity of a particular response are met[,]" People v. Goetz, 68 N.Y.2d 96, 106 (1986) (citation omitted), that is, "the actor 'reasonably believes' that another person either is using or about to use deadly physical force . . . and the actor 'reasonably believes' that such force is necessary to avert the perceived threat." Id. (footnote omitted).

According to Petitioner, the stabbing occurred after he and the victim had an argument at the victim's apartment about money Petitioner was owed by the victim. After asking the victim "to be straight with [him] and to please come up with what he owed", Petitioner "turned to leave, [and] the victim grabbed a pan from the stove and proceeded to strike [him] in the back of [his] head."

-6-

Affidavit of Robert Mills ("Mills Aff.")[1], ¶ 5. Petitioner "naturally turned and tried to wrestle with" the victim, who "became wild and struck [him] repeatedly on [his] back and head with the pan." Id., ¶ 6. Petitioner recalled telling trial counsel that the 61-year-old victim "grabbed [Petitioner] about the neck[,]" causing them to collide into the stove several feet away, at which point the victim grabbed a knife from the side of the stove, "charged" at Petitioner, and struck him in the face with the knife, "causing a gashing wound." Id. Petitioner asserts that his fingers and collarbone were cut as he attempted to wrest the knife away from the victim. Petitioner said that he was able to get control of the knife, which he "thrusted" at the victim "in an attempt to scare him." Id., ¶ 7. However, the victim "was hit once in the neck with the knife and fell to the floor." Id. Petitioner then fled.

Petitioner's own statements undermine any defense of justification. Importantly, Petitioner admits that he was able to disarm the victim before he stabbed him. Thus, there was no objective evidence that the victim was using or about to use deadly physical force. In other words, a reasonable person would not have believed, under the circumstances in which Petitioner found himself, that he was subject to a present or imminent deadly

---

[1]

This document, dated December 6, 2011, was attached as Exhibit A to Petitioner's Motion to Vacate the Judgment, also dated December 6, 2011.

physical attack. See Lopez v. Ercole, No. 09 Civ. 1398(PAC)(AJP), 2010 WL 1628994, at *25 (S.D.N.Y. Apr. 21, 2010) ("At the time Lopez stabbed her, Torres was not armed and the underlying justification for the use of deadly force, the reasonable belief that one is under deadly attack, is entirely lacking. Thus, even if Lopez truly believed . . . that his actions were justified because he believed that he had to do something before Torres killed him, that belief was unreasonable."), rep. and rec. adopted, 2014 WL 285079 (S.D.N.Y. Jan. 27, 2014), aff'd, 588 F. App'x 39 (2d Cir. 2014). Petitioner's statements likewise undermine the subjective element of the justification defense. Petitioner admitted that he did not personally believe he needed to use deadly physical force to defend against the imminent use of deadly physical force by the victim. As noted above, Petitioner explained that he "thrusted" the knife at the victim in an attempt to scare him–not in an attempt to repel an occurring or imminent deadly physical attack.

Further weakening an already weak justification defense was the statement by Petitioner's girlfriend, Cherie Utter ("Utter"), to the police. According to Utter, prior to the incident, Petitioner said he was going to get the money he was owed by the victim and "beat [the victim] up." Statement of Cherie Utter ("Utter Stmt."), p. 1. Later that night, Petitioner told Utter that he had "slit [the victim]'s throat" because the victim "put up a fight[.]" Id., p. 3. Petitioner told Utter that if she told

-8-

anybody, she "would go down with him," and he directed her to blame the murder on their acquaintances, "Nito" and "Fatboy." Id., p. 4.

In sum, Petitioner's own testimony would not have aided him in convincing a jury to accept a justification defense. Based on listening to Petitioner's proposed testimony alone, trial counsel reasonably concluded that such a defense had no reasonable probability of success at trial. Adding Utter's statement into the calculus merely strengthens the Court's conclusion that trial counsel's decision not to recommend a justification defense was entirely reasonable and did not result in prejudice to Petitioner.

**B.   Voluntariness of Guilty Plea**

Petitioner contends that his guilty plea was not knowing, voluntary, and intelligent because trial counsel  erroneously advised Petitioner on "the nature of the evidence against him . . . [and] the sentencing exposure faced by the petitioner in order to induce him to plead guilty . . . ." Pet., ¶ 22(A). Respondent argues that this claim is unexhausted because it was never raised in state court, and is procedurally defaulted because Petitioner cannot present it on direct appeal, and it would be mandatorily barred by C.P.L. § 440.10(2)(c) if it were raised in a collateral motion to vacate. The Court need not decide these exhaustion and procedural default issues as this claim is easily resolved against Petitioner.

In order to comply with the requirements of due process, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The Second Circuit has explained that "a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988).

Petitioner accuses trial counsel of erroneously informing him that the victim had been stabbed multiple times, while the autopsy report actually showed that the victim sustained only one stab wound to the left side of the neck. According to Petitioner, the fact that the victim was not stabbed multiple times would have strengthened his justification defense. Petitioner's assertion that he did not know how many times the victim had been stabbed is not only implausible, given that Petitioner was present during the incident, it is contradicted by his own statements. In his affidavit, Petitioner states that he told trial counsel that the victim was "hit once" with the knife. See Mills Aff., ¶ 7 ("Unfortunately the victim was hit once in the neck with the knife and fell to the floor."). Moreover,  although the victim suffered

only one stab wound, he sustained multiple blunt traumatic injuries to the head, face, neck, and chest. Petitioner, on the other hand, sustained very minor lacerations. These facts further undermined the strength of his justification defense.

Finally, at the plea colloquy, trial counsel stated, "Never once has [Petitioner] said to me he did this in self defense. Mostly he said [']I lost my temper, I lost control of myself. . . .[']" S.4.[2] According to Petitioner's present assertions, these statements by his attorney were untrue. Nevertheless, Petitioner stood mute and did not correct his attorney either at that point or later when he made his own statement to the court.

Petitioner also contends that he relied to his detriment on trial counsel's opinion that, if Petitioner were convicted of second degree murder and sentenced to 25 years to life, he was not likely to be granted parole. Petitioner states that this is untrue, because his corrections counselors informed him "that notwithstanding pre-release program requirements, a person appearing before the Parole Board after serving 25 years of a 25 year to life sentence, has an equal chance of being paroled as anyone else." Even assuming that Petitioner is correct that the current climate at the New York State Parole Division is more favorable for violent felony offenders seeking parole, this does not cast doubt on whether Petitioner's plea was knowing and

---

[2]

Citations to "S." refer to pages from the October 5, 2010 sentencing transcript.

voluntary. As the Second Circuit has explained, the scenario in which a court or counsel erroneously informs a defendant of the wrong minimum penalty is "far more troubling[,]" <u>United States v. Harrington</u>, 354 F.3d 178, 185 (2d Cir. 2004), than a defendant being informed of the wrong maximum penalty, <u>id.</u> (citation omitted); <u>see also</u> <u>Oyague v. Artuz</u>, 393 F.3d 99, 105 (2d Cir. 2004) ("[W]e view misrepresentations of maximum sentences far less critically than overstatements of minimum sentences.") (citation omitted). Assuming Petitioner's two options were a 22-year determinate sentence and a 25-year-to-life indeterminate sentence, it is impossible to find that he was prejudiced by pleading guilty. According to the New York State Department of Corrections and Community Supervision website, Petitioner will be eligible for conditional release on August 1, 2029, after serving approximately 19 years. Petitioner would not have been eligible for parole in less than 19 years, had he been convicted of second degree murder and sentenced to 25 years to life.

Importantly, sworn statements made by a defendant in open court constitute a "formidable barrier" that are not lightly disregarded in subsequent collateral proceedings, because "[s]olemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Petitioner here answered affirmatively when asked by the trial court whether he had had enough time to consult with his attorney and whether he was

satisfied with the advice he had received.  Unlike Petitioner, courts attach "considerable importance," Little v. Allsbrook, 731 F.2d 238, 240 n.2 (4th Cir. 1984), to this type of procedural dialogue between a defendant and a judge during a plea colloquy. "In the absence of clear and convincing evidence to the contrary, [Petitioner] must be bound by what he said at the time of his plea." Id.

**C.   Illegally Obtained Statement**

As his third ground for relief, Petitioner asserts that his confession "was illegally obtained because he was represented by counsel on an open charge, was incarcerated in the county jail, and never waived his right to counsel, with counsel present[.]" Pet., ¶ 22(C). Petitioner faults trial counsel for not challenging the statement by means of a hearing pursuant to People v. Rogers, 48 N.Y.2d 167 (1979).[3]

Petitioner raised these claims in his [ ] C.P.L. § 440.10 motion. The 440 Court observed that at the time Petitioner was interrogated by the police, he was awaiting sentencing following his guilty plea in Buffalo City Court to one count of Resisting Arrest, a class A misdemeanor. The 440 Court found that even assuming Petitioner was entitled to a Rogers hearing, the fact that

---

[3]
Id. In Rogers, the New York Court of Appeals held that where an arrestee is represented by counsel on an unrelated charge, and counsel orders the police to cease their questioning, the arrestee may not be questioned further unless counsel is present. 48 N.Y.2d at 169.

no such hearing was held would be a non-jurisdictional error and would not have divested this court of jurisdiction of this indictment. The 440 Court further found "it would not have been unreasonable for defense counsel in the instant case to have concluded that suppression of the defendant's statement . . . would not have resulted in his acquittal given the strength of the prosecution's case . . . ." Id. As discussed below, the 440 Court's rejection of these claims was not incorrect as a matter of Federal law.

It is well settled that "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea" but "'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutionally acceptable] standards.'" United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). As the Supreme Court has explained, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267.

-14-

An exception to the <u>Tollett</u> rule exists "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues[.]" <u>Lefkowitz v. Newsome</u>, 420 U.S. 283, 293 (1975); <u>see also</u> <u>id.</u> at 289-90. In <u>Lefkowitz</u>, the Supreme Court held that the habeas petitioner's claim of an alleged unconstitutional search and seizure was not barred by his guilty plea because New York law permits a defendant to appeal suppression claims after pleading guilty. <u>Id.</u> at 290; <u>see</u> N.Y. CRIM. PROC. LAW § 710.70(2) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty.").

With regard to Petitioner's stand-alone claim that his confession was obtained in violation of his right to counsel under <u>People v. Rogers</u>, Petitioner cannot avail himself of the <u>Lefkowitz</u> exception because he failed to file a suppression motion. By pleading guilty without first filing a motion to suppress, Petitioner removed the right to counsel issue from his state court proceeding. <u>See</u> <u>Lugo v. Artus</u>, 05 CIV. 1998(SAS), 2008 WL 312298, at *4 & nn.39 & 40 (S.D.N.Y. Jan. 31, 2008) (citing N.Y. CRIM. PROC. LAW § 710.70(3) ("A motion to suppress evidence made pursuant to this article is the exclusive method of challenging the admissibility of evidence upon the grounds specified in [C.P.L. §] 710.20, and a defendant who does not make such a motion before or

in the course of a criminal action waives his right to judicial determination of any such contention.")). A further consequence of pleading guilty is that Petitioner removed the ineffective assistance of counsel claim based on his attorney's failure to file a suppression motion. Because defendants are not permitted under New York law to appeal ineffective assistance of counsel claims relating to events prior to the guilty plea that do not affect the voluntariness of the plea, the Lefkowitz exception does not apply. See id. (habeas petitioner's admission of guilt and court's verification that petitioner consulted with his attorney demonstrated voluntariness of guilty plea; thus, ineffective assistance of counsel claims, as well as claims of denial of the right to counsel and illegal search and seizure, "cannot survive as a matter of law").

### D.   Ineffective Assistance of Appellate Counsel

In ground four of his petition, Petitioner asserts that appellate counsel "erroneously advised him to withdraw his direct appeal stating that the petitioner had no viable issues to appeal when the petitioner had viable issues to appeal." Pet., ¶ 22(D) (citations to attachments omitted). Petitioner also states, without elaboration, that "[t]he max sentence on a B felony is 25 yrs. - Defendant received 22yrs with 5yrs PRS, making the sentence illegal." Id. Respondent argues that these claims are unexhausted because Petitioner did not raise them in a coram nobis application

-16-

to the Appellate Division, which is the proper procedural vehicle for exhausting claims of appellate counsel's ineffectiveness. See People v. Bachert, 69 N.Y.2d 593, 596 (1987). Under New York law, there is no time limit for an application for a writ of error coram nobis. See, e.g., Beuther v. Lefevre, No. 88 C 2397, 1989 WL 18726, at *2 (E.D.N.Y. Feb. 15, 1989). Therefore, since Petitioner may still initiate a coram nobis proceeding, he has "failed to exhaust the remedies available in the courts of the state" with respect to his ineffective assistance of appellate counsel claims. E.g., Moss v. N.Y., NO. 10-CV-5840 SJF, 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing Beuther, 1989 WL 18726, at *2). Petitioner has not requested a stay to return to state court to file a coram nobis application, and the Court finds that granting a stay would be an abuse of discretion because Petitioner's ineffective assistance of appellate counsel claim is plainly meritless under any standard of review. The Court accordingly exercises its authority under 28 U.S.C. § 2254(b)(2) to deny the petition, including this unexhausted claim, on the merits. See, e.g., Palaguachi v. Keane, 58 F. App'x 862, 864 (2d Cir. 2003) (rejecting petitioner's contention that district court's denial on the merits of his unexhausted claim was erroneous and that the district court should have allowed the state courts to consider the claim in the first instance; 28 U.S.C. § 2254(b)(2) expressly authorizes a federal court to deny an unexhausted claim on the merits).

Petitioner, as part of his guilty plea, waived his right to appeal and received a sentence within the negotiated range. On this record, the Court discerns no meritorious issues to present on a direct appeal. Furthermore, as Respondent argues, Petitioner actually had much to lose if he challenged the harshness of his sentence on appeal. In a letter dated November 14, 2012, appellate counsel explained that Petitioner had received an illegal sentence because he was incorrectly sentenced as a first-time felony offender rather than a second felony offender. If Petitioner appealed his sentence, the Fourth Department would have been bound to vacate it and order him sentenced as a second felony offender. Appellate counsel noted that such a designation carried not only a stigma, but the potential for harsher sentencing consequences in the future. Appellate counsel also pointed out that as a second felony offender, an increased minimum sentence was mandatory. Under such circumstances, the Fourth Department likely would not be inclined to reduce his current sentence of imprisonment. Appellate counsel's advice was entirely reasonable and proper. Plaintiff's complaints against appellate counsel are baseless.

## IV. Conclusion

For the reasons discussed above, the request for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed. Because Petitioner has failed to make a substantial showing of the

denial of a constitutional right, <u>see</u> 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           April 13, 2015